## Johnson, Governor. v. Commonwealth ex rel. Meredith, Atty. Gen.

Aug. 26, 1942.

830

Smith & Leary and Amos H. Eblen for appellants.

Hubert Meredith, Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The circuit court adjudged unconstitutional Chapter 106 of the Acts of the 1942 General Assembly relating to the employment of attorneys by the various executive departments of the government. We summarize its provisions.

The Act provides that, with the approval of the Governor, any department, including "each and every administrative department, agency, division and independent agency" as defined in the Governmental Reorganization Act of 1936, Acts 1936, 1st Ex. Sess., c. 1, when it "deems it necessary," may employ an attorney or attorneys to render it legal services. His compensation and expenses are payable out of appropriations for the department, and the amount and terms of the employment are to be approved by the Governor's executive order. Services may be rendered more than one department or agency. The attorney shall devote his full time to the work. He is authorized to appear as chief attorney and represent the department in the trial of all cases and proceedings in any court or before any board or governmental tribunal "whenever such department or any officer or employee thereof is a party in interest or the official rights, powers or duties of the department or of any officer or employee thereof are directly or indirectly affected." Generally, the attorney is employed to advise and to perform all legal services pertaining to the official duties of the department. It is further provided, however, that nothing in the Act shall be construed to affect the tenure or compensation of any assistant attorney general now serving pursuant to law or to limit the right of any department or agency to require the services of the Attorney General and his assistants "as now provided by law." The Act repeals Section 112-5

of the Statutes, and all other laws and parts of laws to the extent that they conflict with its terms.

The Attorney General vigorously assails the Act as a vicious "Ripper Bill," iniquitous in purpose, dangerous in operation, opposed to our scheme of government, subversive of sound public policy, and unconstitutional withal. Including the Governor's office there are 22 administrative departments and independent agencies other than the Department of Law (the Attorney General's office) established by the "Governmental Reorganization Act" of 1936 (Section 4618-70, Statutes) and under some of those there are several divisions and agencies which possibly could also employ separate attorneys. The Act is indeed so broad in its scope as to be fraught with opportunities for abuse and extravagance and productive of conflict and confusion in the legal representation which has heretofore been centralized in the Attorney General and his staff. If the authority given by the Act should be exercised in its entirety, the Attorney General would be relieved of many present duties and stripped of many prerogatives which that officer has hitherto performed and enjoyed under statutory direction and authorization or through immemorial custom. However, it is not to be assumed that the attitude of the chief executive and the responsible heads of the departments will be so antagonistic to the public welfare that they shall concur to such an extent that the feared evils will result. It is not supposed they will take their eyes off the public good.

Be that as it may, it is a principle, basic in its recognition and fundamental to the co-ordination of the two divisions of governmental power, that the courts do not concern themselves with the wisdom, need or appropriateness of legislation, nor the purposes motivating it. That is left where it is put by the Constitution—in the General Assembly, subject only to the veto power of the Governor. Section 26 of the Constitution declares that all laws "contrary to this Constitution shall be void." Our functions are to determine the constitutional validity and to declare the meaning of what the legislative department has done. We have no other concern.

And we have been sensitive to the rule that an Act should be held valid unless it clearly offends the limitations and prohibitions of the constitution, within which is everything contrary to the policy and genius of our form of government. So, always the burden is upon one

who questions the validity of an Act to sustain his contentions.

The primary thesis of the Attorney General is as above indicated. We first dispose of other grounds of attack.

The title is:

"An Act relating to attorneys for administrative departments, agencies, divisions and independent agencies of the Commonwealth of Kentucky."

The point is made that this fails to meet the requirements of Section 51 of the Constitution, that the subject of an act shall be expressed in the title. It has been frequently written that the purpose of this provision is to enable persons reading the title to get a general idea of what subject is treated or what the bill contains; that the title must give fair and reasonable notice of its nature and provisions. Thompson v. Commonwealth, 159 Ky. 8, 166 S. W. 623; State Athletic Control Board v. Blake Amusement Co., 249 Ky. 358, 60 S. W. (2d) 950. It is different where the title is specific. As lately said in Board of Education v. City of Louisville, 288 Ky. 656, 157 S. W. (2d) 337, 340:

"It has been the consistent interpretation of this section of the Constitution that if the title of an act is general, then any provision in the body having a natural connection with the subject expressed in the title and not foreign to it satisfies the requirement of the Constitution."

It is submitted that the title to the bill did not serve notice that its scope was so broad as to affect the office and duties of the Attorney General and his assistants; that the title suggested only that attorneys for the administrative departments and bureaus were being dealt with and not the Attorney General and his department. We do not regard it as so restrictive. We think it is germane to the indicated scope to provide not only for the employment of attorneys by the departments and agencies, but to repeal, expressly or generally, conflicting laws, including those vesting powers, duties and rights in the Attorney General. As was well known, from time immemorial the Attorney General had advised and represented all the executive departments of government. To say in the title that the act relates to the employment of attorneys by those departments is to in-

dicate that a change is being made in the existing laws. It did not have to contain a statement that inconsistent laws were being repealed. We conclude the title good and sufficient. Charles v. Flanary, 192 Ky. 511, 233, S. W. 904; Link v. Commonwealth, 205 Ky. 243, 265 S. W. 804; Bowman v. Hamlett, 159 Ky. 184, 166 S. W. 1008; Eastern Ky. Coal Lands Corp. v. Commonwealth, 127 Ky. 667, 106 S. W. 260, 108 S. W. 1138; Estes v. State Highway Commission, 235 Ky. 86, 29 S. W. (2d) 583; State Budget Commission v. Adams, 249 Ky. 680, 61 S. W. (2d) 314; Game & Fish Commission v. Talbott, 251 Ky. 268, 64 S. W. (2d) 889; Talbott v. Laffoon, 257 Ky. 773, 79 S. W. (2d) 244; Allen v. Commonwealth, 272 Ky. 533, 114 S. W. (2d) 757; Burton v. Mayer, 274 Ky. 245, 118 S. W. (2d) 161.

Nor do we think the Act offends that part of Section 51 of the Constitution which prohibits the revision or amendment of any statute without setting it out in full as it will be when so changed. This Act does not purport to be a revision or amendment. When an act is new and independent of any existing law it is not necessary to republish any part of an old law which becomes inoperative, changed or repealed by it. Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, 166 S. W. 1017.

It is contended that since the Act permits the employment of an attorney "when any department deems it necessary," and at the same time provides that any department or agency may require the advice or services of the Attorney General and his staff, it violates other provisions of the Constitution. It is argued the Act undertakes to delegate legislative power, contrary to Section 29, because it confers on the several executive departments and the Governor the power to divest the Attorney General of a major portion of his powers and prerogatives, and by their ipse dixit to render inoperative or to repeal for a time and then to render operative and effective again the various sections of the statutes conferring those powers and prerogatives; that it leaves the creation and the existence or non-existence of the office of departmental counsel wholly to their discretion and that is done without any standard being established or any uniform rule of action laid down or factual condition found to exist. It is charged that the hypothesis or condition that "when any department deems it necessary" is an "undefined, unrestricted and boundless"

authority. Upon the same reasoning it is contended the Act violates Section 2 of the Constitution as being an attempt to confer "absolute and arbitrary power," and Section 60 providing that "No law * * * shall be enacted to take effect upon the approval of any other authority than the general assembly."

It seems sufficient to express the opinion that all these arguments rest upon a false premise. The taking effect of the Act is not made dependent upon the will of anyone or the arising of any condition. It went into effect fully when approved by the Governor. It does not authorize the departments to create any office or position. The creation is only the authority and that was by the legislature itself. The departments are merely authorized to *use* the law when they deem it necessary for the good of the service. Its life is not made contingent or conditional. Only its use is. Whether it shall be used or not is the discretion vested in the administrative departments. As said in County Board of Education of Bath County v. Goodpaster, 260 Ky. 198, 84 S. W. (2) 55, 58, the "delegation of legislative power in relation to constitutional limitations means delegation of discretion as to what the law shall be, and does not mean that the Legislature may not confer discretion in the administration of the law itself. Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828. Many are the instances where powers more nearly approaching the legislative prerogative than this have been vested in executive or administrative agencies and sustained as valid." See, also, Ashland Transfer Co. v. State Tax Commission, 247 Ky. 144, 56 S. W. (2d) 691, 87 A. L. R. 534; Spahn v. Stewart, 268 Ky. 97, 103 S. W. (2d) 651. Compare Bloemer v. Turner, 281 Ky. 832, 137 S. W. (2d) 387. Always have the statutes vested authority in executive and other departments of the state government to be used in their discretion according to their judgment as to the need. It is usually expressed by the permissive word, "may." Here it is the equivalent: that when it is deemed necessary they "shall have the power and the authority," to employ an attorney for full time. There are many similar statutes. Thus, the Court of Appeals is authorized to appoint its Commissioners and to dispense with the services of any or all of them "when the business of the court does not require their services." There is a like provision as to its other officers and employees. Section 962 et seq. Statutes. The same is true as to the Attorney General. If in his

opinion an emergency has arisen requiring the employment of special counsel, he may request the Governor to do so, giving his reasons, i. e., why he "deems it necessary." Section 112-5, Statutes. No other yard stick need be applied. Commonwealth v. Begley, 273 Ky. 636, 117 S. W. (2d) 599. He may or may not in his discretion appoint a maximum number of assistant attorneys general or employ stenographers or other clerical help "as in his judgment may be necessary for the proper conduct of his office," for the payment of which employees he is given a lump sum annually to be in whole or in part apportioned among them as he chooses. Section 112-5, Statutes. It was necessary that the legislature give special authority for the employment of counsel by the departments since the existing statutes place upon the Attorney General the duty of furnishing legal advice and services to them, and without such an exception, or partial repeal, the departments could not employ their own lawyers. Montgomery v. Gayle, 216 Ky. 567, 288 S. W. 323.

It is also argued the Act violates Section 59 of the Constitution which prohibits special legislation where a general law can be made applicable (Subsection 29) and a special enactment to create public officers, "or to authorize officers to appoint deputies." Subsection 18. Coupled with this is the argument that the Act is contrary to that part of Section 60 which prohibits the legislature from enacting "any special or local act by the repeal in part of a general act." The distinction between a general and a special law is thus clearly defined in State ex rel. v. Tolle, 71 Mo. 645, 650:

"A statute which relates to persons or things *as a class* is a general law, while a statute which relates to particular persons or things *of a class* is special."

Similar distinction is drawn in Stevenson v. Hardin, 238 Ky. 600, 38 S. W. (2d) 462 and Ravitz v. Steurele, 257 Ky. 108, 77 S. W. (2d) 360. We can conceive nothing more foreign to special legislation than the authorization of all executive departments of the state to employ a certain class of professional assistants. As already stated, the Act does not undertake to create any public office or deputy office. It merely authorizes every executive department to hire a lawyer.

It is further contended that in conferring upon the

heads of the departments and the governor the power to fix the salaries or compensation of these employees the Act offends Section 246, which provides that the salaries of public officers "shall be fixed and provided for by law." This would seem to come within the class of objections made as being a delegation of legislative power. The law does in fact provide for the salaries. The fixing of the amount in each particular instance is an administrative and not a legislative act. To sustain the argument would be to declare that the legislature must name the number of and specify the salaries of every employee of the state, no matter how small or humble the position or job may be.

Therefore, we are of opinion the Act is not unconstitutional in the respects claimed.

We come to consider the proposition that the Act is an attempt to take away the inherent and constitutional powers and prerogatives of the Attorney General. As the several state administrative departments were unknown to the common law (although a few may have had counterparts) and the legislature had previously directed the Attorney General to represent them, there is no doubt as to statutory powers that since the legislature gave them, it can take them away. The point is that the office inherently carries the power and the right to represent the state as the sovereign in all its operations, and that can not be given to anyone else.

The office of Attorney General existed in England from an early date. Most of the American colonies established an office of the same name, and it was carried into the succeeding state governments. Legal historians are not in accord as to just what were the powers and prerogatives of the Attorney General in the mother country, but they are agreed that he was the chief law officer of the Crown, managing all the king's legal affairs, attending to all suits, civil and criminal, in which he was interested, and exercising other high duties and prerogatives, some of which were quite foreign to the legal. To what extent those undefined powers attached to the same office in this country is likewise the subject of different views. However, it is certain that the Attorney General has been the chief law officer of the federal or the state governments with the duty of representing the sovereign, national or state, in such capacity.

It is generally recognized that unless denied by statute the attorney general of any state is clothed with all the powers incident to and traditionally belonging to his office. They are implicit in the relationship; in other words, inherently ex officio. Comprehensively, they are to represent his state as its chief lawyer and to advise and speak for its several departments and officers in legal matters. A majority of the courts hold that he has all common law powers and duties except as modified by the constitution or statutes; and, of course, such as may be added by the constitution and statutes. Thornton on Attorneys at Law, secs. 719, 720, 732, 733, 739; 5 Am. Jur., "Attorneys General," secs. 2, 5, 8; 7 C. J. S., Attorney General, sec. 8, p. 1226; Darling Apartment Co. v. Springer, Del. 22 A. (2d) 397, 137 A. L. R. 811.

Some of the exceptions rest upon particular constitutional provisions and others upon different judicial interpretations. Many of the constitutions merely establish the office without making mention of its duties.

Section 91 of the Constitution of Kentucky provides that the Attorney General and (six other officers) shall be elected every four years, and that, "The duties of all these officers shall be such as may be prescribed by law" (and certain specific duties of the Secretary of State). Section 93 makes those seven officers ineligible to re-election and declares, "The duties and responsibilities of these officers shall be prescribed by law." Thus the mandate is repeated.

There are twenty-seven state constitutions containing the same or similar provisions. The decisions in those jurisdictions where questions have been raised as to the power of the legislature to authorize commissions or officers to be represented by counsel other than the attorney general are not in accord. There are three different views, namely:

(1) The legislature may not only add duties but may lessen or limit common law duties. It is so held, expressly or impliedly, in State v. Boeckeler Lumber Co., 302 Mo. 187, 257 S. W. 453; Commonwealth v. Kozlowsky, 238 Mass. 379, 131 N. E. 207; People v. Santa Clara Lumber Co., 126 App. Div. 616, 110 N. Y. S. 280; State v. Ehrlick, 65 W. Va. 700, 64 S. E. 935, 23 L. R. A., N. S., 691; State v. Robinson, 101 Minn. 277, 112 N. W. 269, 20 L. R. A., N. S., 1127; State v. Finch, 128 Kan. 665, 280

P. 910, 66 A. L. R. 1369; Follmer v. State, 94 Neb. 217, 142 N. W. 908, Ann. Cas. 1914D, 151; State v. Young, 54 Mont. 401, 170 P. 947; Public Utilities Commissioners v. Lehigh Valley R. Co., 106 N. J. L. 411, 149 A. 263.

(2) The term "as prescribed by law" has been held in the following cases, in effect, to negative the existence of any common law duties, so that the Attorney General has none, and the legislature may deal with the office at will: Atchison, T. & S. F. R. Co. v. People, 5 Colo. 60; Shute v. Frohmiller, 53 Ariz. 483, 90 P. (2d) 998; State v. Industrial Commission, 172 Wis. 415, 179 N. W. 579; State v. Seattle Gas & Electric Co., 28 Wash. 488, 68 P. 946, 949, 70 P. 114; State v. Huston, 21 Okl. 782, 97 P. 982; Railroad Tax Cases, C. C., 136 F. 233 (construing Arkansas constitution).

(3) The term has been construed in Illinois and Nebraska to mean that the legislatures may add to the common law duties of the office, but they are inviolable and cannot be diminished. Fergus v. Russell, 270 Ill. 304, 110 N. E. 130, Ann. Cas. 1916B, 1120; Ex parte Corliss, 16 N. D. 470, 114 N. W. 962; see, also, State ex rel. Amerland v. Hagan, 44 N. D. 306, 175 N. W. 372.

We have already held that the Attorney General of Kentucky possesses common law duties and rights. Chambers v. Baptist Education Society, 1 B. Mon. 215, 40 Ky. 215; Repass v. Commonwealth, 131 Ky. 807, 115 S. W. 1131, 1132, 21 L. R. A., N. S., 836. In the latter opinion it is said:

> "It cannot be presumed that, in creating the state government and in creating the law department, it was contemplated that the head of the law department should not have such authority as was exercised by the Attorney General at common law."

It was further stated in that opinion that, "it must be presumed that, when the office was created in Kentucky, it was contemplated that the officer should have all the powers then recognized as belonging to it, *except so far as these powers were limited by statute.*" (Emphasis added).

That the executive departments, boards or commissions may be represented by an attorney other than the Attorney General was recognized, or impliedly held, in Kentucky State Board of Dental Examiners v. Payne, 213 Ky. 382, 281 S. W. 188. The board instituted pro-

ceedings to enjoin one from practicing dentistry without a license, and the defendant denied its authority to maintain the suit. At that time the statute (Section 2636-2) did not expressly authorize the Board, as it does now, to employ an attorney; but it was represented by one it had employed. The opinion states that, generally, where injunctive relief of that character is sought, the Commonwealth is the moving spirit behind it and the suit should be brought in the name of the Attorney General as relator. "But," continues the opinion, "it is competent for the Legislature to provide otherwise, since there is nothing in our Constitution limiting its right to so prescribe, and, in the absence of such constitutional limitation, it has the authority to do so under the well-known principle that the Legislatures of the states have all power, except those withheld by the Constitution of the particular jurisdiction. There is nothing in our Constitution limiting or circumscribing the power or authorty of the Legislature to prescribe by whom such actions when maintainable at all may be prosecuted." As the Attorney General was not present in that case to defend the prerogatives of the office, and because of its nature, it is fair that the question be reconsidered here when it is directly before the court with extensive application.

If prescribing the Attorney General's duties in representing and counselling the departments of government be but the specification and distribution of duties already devolving upon him by virtue of his common law professional relationship, and if in taking them away, potentially or actually, the legislature has invaded that common law prerogative, the question of constitutional power to do so is presented.

Section 233 of the Constitution is as follows:

"All laws which, on the first day of June, one thousand seven hundred and ninety-two, were in force in the state of Virginia, and which are of a general nature and not local to that state, and not repugnant to this constitution, nor to the laws which have been enacted by the general assembly of this Commonwealth, shall be in force within this state until they shall be altered or repealed by the general assembly."

The previous constitutions contained identical or substantially the same provisions. It was also in the ordinance adopted by the Virginia Convention on July 3,

1776, putting into operation a constitution adopted on June 29, 1776, in connection with her Declaration of Independence proclaimed on that day. That Constitution created the office of Attorney General without describing his duties. It is by virtue of the provision, which is now Section 233 of the present Constitution, above quoted, that from the beginning the common law as thus limited has been recognized as part of the jurisprudence of Kentucky except as "modified by constitutional and statutory law, judicial decisions and the conditions and wants of the people, or which are not repugnant to the spirit of our laws or the public policy of the state." Commonwealth v. Donoghue, 250 Ky. 343, 63 S. W. (2d) 3, 4, 89 A. L. R. 819; Hunt v. Warnicke's Heirs, Hardin 61, 3 Ky. 61, 66; Ray v. Sweeney, 14 Bush 1, 2, 29 Am. Rep. 388; Aetna Ins. Co. v. Commonwealth, 106 Ky. 864, 51 S. W. 624, 45 L. R. A. 355; Nider v. Commonwealth, 140 Ky. 684, 131 S. W. 1024, Ann. Cas. 1913E, 1246; Campbell v. W. M. Ritter Lumber Co., 140 Ky. 312, 131 S. W. 20, 140 Am. St. Rep. 385.

To state the same thing conversely: Section 233 of the Constitution logically gives the general assembly plenary power to abrogate or modify the common law. When that is regarded in connection with Sections 91 and 93 authorizing the legislature to prescribe the duties of the Attorney General, it seems clear that it may do so at will.

Every doubt disappears in the light of history reflecting the intention of the framers of the Constitution. The first constitution of Kentucky (adopted April 19, 1792) which was based on the constitution of our political mother, Virginia, provided for the appointment of an Attorney General, who should appear for the commonwealth in all criminal and civil cases in which the state was interested "in any of the superior courts," give legal opinions to the legislature and governor, and "perform such other duties as shall be enjoined him by law." Art. II, Section 16. The second constitution (1799) provided, "An attorney-general, and such other attorneys for the commonwealth as may be necessary, shall be appointed, whose duty shall be regulated by law." Art. III, Section 23. The third constitution (1850) provided for the election of an attorney general, with three other officers, whose duties and responsibilities "shall be prescribed by law." Art. 3, Section 25. The

present constitution (1891) as already recited, uses the same language. In the year 1829 the Court stated, "The duties of the attorney general are prescribed by law." Reviewing the statutes it was further said: "* * * he is not the attorney for the Commonwealth, in all cases and in all courts." Sharp's Adm'x v. Kirkendall, 2 J. J. Marsh. 150, 25 Ky. 150. The exercise of legislative power to authorize departments of the state to employ counsel and have others than the Attorney General to represent them, is not without precedent. It was exercised under the Constitution of 1850 by an Act of February 24, 1873, authorizing the Governor to employ counsel to represent and attend to the interests of the Commonwealth when it was not "otherwise provided by law;" and an Act of March 18, 1876, authorizing the Auditor of Public Accounts and the Commissioners of the Sinking Fund to employ attorneys to bring or defend suits where it was not made the duty of the Attorney General to do so. The framers of the present constitution knew this and were satisfied to use the same provision, apparently with the expectation that it would be similarly construed in the future. It has been so construed by the legislature before the present Act. Statutes have existed for some time authorizing the employment of counsel by the Insurance Department in civil cases, Section 762, Statutes; the State Board of Health, Section 2054a-19; and State Board of Dental Examiners, Section 2636-2. From the beginning, provisions have been made for the employment of special counsel by the Attorney General or by the Governor upon his request. Section 112-5, Statutes. The exercise of this power by the legislature has not hitherto been questioned. Only the procedure under the legislation has been attacked. See Rogers v. Bradley, 100 Ky. 344, 38 S. W. 501; Gordan, Huffaker & Garnett v. Morrow, 186 Ky. 713, 218 S. W. 258, and cases therein cited. Closer in principle are the many instances where the legislature has from time to time assigned to other officers duties which naturally and conventionally belong to the Governor or to a sheriff or constable or other constitutional officer, concerning whose duties the constitution is silent, or does not expressly authorize the legislature "to prescribe." Many of those constitutional officers were as well known to the common law as was the Attorney General. As to them, the claim of an absence of legislative power to diminish or divest the common law rights and duties appertaining to the same of-

fice which existed in England and down to this day would be more substantial; but the power has not been questioned. See City of Owensboro v. Hazel, 229 Ky. 752, 17 S. W. (2d) 1031, construing Section 160 of the Constitution relating to legislation defining the powers of mayors and holding the General Assembly may confer on a mayor or other executive officer as much or as little power as in its wisdom it deems best.

Finally, consideration may be given the meaning of the word "prescribe." While, strictly speaking, the Act under consideration does not prescribe any duty for the Attorney General, since it merely authorizes the executive departments to employ regular counsel who shall have charge of their respective legal affairs, it does supersede other statutes which do prescribe duties of the Attorney General and, to a certain extent ex officio common law powers. The dictionary definition of "prescribe" is "to direct; to ordain." It is not so narrow as to be confined to a positive order for it also carries the meaning of limitation or restriction. Webster's New International Dictionary. Therefore, the Act is within the constitutional term "to prescribe."

In conclusion, we are of opinion that, while the Attorney General possesses all the power and authority appertaining to the office under common law and naturally and traditionally belonging to it, nevertheless the General Assembly may withdraw those powers and assign them to others or may authorize the employment of other counsel for the departments and officers of the state to perform them. This, however, is subject to the limitation that the office may not be stripped of all duties and rights so as to leave it an empty shell, for, obviously, as the legislature cannot abolish the office directly, it cannot do so indirectly by depriving the incumbent of all his substantial prerogatives or by practically preventing him from discharging the substantial things appertaining to the office.

The obiter dictum in Covington Bridge Commission v. City of Covington, 257 Ky. 813, 79 S. W. (2d) 216, 220, that the legislature "may not divest an office created by or named in the Constitution of its original and inherent functions" is subject to this limitation and qualification.

As to what extent the Act under attack should be construed as affecting the supremacy of the Attorney General as the chief law officer of the Commonwealth, or

to what extent it deprives him of the power and right to represent the Commonwealth as a distinct entity in litigation in which any of the departments employing counsel are involved, or in any other respect, we express no opinion, for they are questions not presented in this suit. It is sufficient to say that we are of opinion that the Act does not deprive the Attorney General of his hereditary and statutory prerogatives to the extent or degree that it can be said that he is left without substantial duties, responsibilities and rights. We, therefore, hold the Act to be constitutional.

Judgment reversed.

Whole Court sitting.

Chief Justice Perry and Judge Ratliff concur in the conclusion. But they are of opinion that the construction of the Act is involved, and that it should be construed as going only to the extent of authorizing the several departments and agencies of the state to employ independent counsel. They are of opinion that the Act does not preclude the Attorney General, as legal representative of the Commonwealth, from appearing in any litigation in which a department, agency or officer is a party where the Attorney General deems it appropriate that he should do so; and therefore the Act should not be held unconstitutional since it does not deprive him of the substantial duties adhering to his office.